EDWARD C. LIEDER AND ANOTHER v.
DONALD J. MAUS.

203 N. W. 2d 393.

January 5, 1973—No. 43230.

*Anderson & Christopherson* and *Charles W. Anderson,* for
appellants.

*Meagher, Geer, Markham & Anderson, J. Richard Bland,* and
*O. C. Adamson II,* for respondent.

Heard before Knutson, C. J., and Peterson, Murphy, and
Schultz, JJ.

HAROLD W. SCHULTZ, JUSTICE.*

Plaintiffs, Edward C. Lieder and Nellie Lieder, appeal from
the denial of a motion for a new trial. The grounds for the motion

---

*Acting as Justice of the Supreme Court by appointment pursuant
to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

were the failure of the trial court to allow into evidence certain testimony of plaintiffs' expert witness, Dr. Bror Troedsson, because of an alleged lack of foundation. The trial court granted defendant's motion for dismissal with prejudice at the close of the plaintiffs' case.

This is a medical malpractice case in which plaintiffs sought to show that defendant, Dr. Donald J. Maus, treated Mrs. Lieder in a neligent manner and that as a result she sustained permanent injuries and disabilities and that Mr. Lieder sustained consequential damages.

Defendant, a licensed physician, graduated from the University of Minnesota Medical School in 1962, interned for 1 year in Duluth, and has been in general practice in Monticello since 1963. On November 2, 1968, at 11:30 p.m. the defendant was called to the Monticello Hospital where he saw and treated Mrs. Lieder for fractures of both wrists. X-rays were taken and it was determined that Mrs. Lieder had comminuted fractures of the distal radius bilaterally of both wrists. The wrist bones were broken into multiple fragments with displacement of the fragments. This type of injury is referred to as a "Colles fracture." No reduction of the fractures was attempted other than that incidental to the application of circular plaster casts to each wrist. Dr. Maus saw Mrs. Lieder each day for the next 6 days in the hospital. He removed the casts at the end of 3½ weeks. During the time the casts were on, Mrs. Lieder suffered a swelling of the hands and wrists and cyanosis, a dusty discoloration or purplish hue of the skin. Plaintiffs claim that, as a result of failure to reduce the fractures, the fragments of the broken bones were not pushed into proper position and Mrs. Leider suffered a silver-fork deformity of the left wrist, meaning that the wrist, instead of being straight, comes up in a hump and the fingers go down like a fork. Mrs. Lieder also sustained limitation of motion to the fingers of her left hand and a slight limitation of motion in the right wrist.

In an effort to prove defendant was negligent in his treatment

of Mrs. Lieder and that his negligent treatment resulted in a lack of motion and deformity of her wrist and hands, plaintiffs sought to qualify Dr. Bror Troedsson as an expert witness to testify as to the proper procedures and standard of care required in treating a Colles fracture of the type suffered by Mrs. Lieder. The trial court determined that Dr. Troedsson was not qualified as a medical expert and refused to allow him to testify regarding the standard of care required of Dr. Maus. Regarding his qualifications to testify, Dr. Troedsson testified:

1. He is a physician duly licensed to practice in the State of Minnesota.

2. He graduated from the Columbia College of Physicians and Surgeons in 1931.

3. He was in general practice for 2 years. He subsequently took up the specialty of physical medicine and rehabilitation.

4. He spent 5 years in the New York Hospital Cornell Medical Center and in this specialty developed and ran several departments of physical medicine and rehabilitation in various other hospitals until 1954, when he came to Minnesota and became chief of physical medicine and rehabilitation at the Veterans Administration Hospital and associate professor of physical medicine and rehabilitation at the University of Minnesota.

5. As head of physical medicine and rehabilitation at the Veterans Administration Hospital he oversees a ward of 40 beds, and, in addition, he has approximately 250 people under his care at any given time.

6. He is familiar with Colles fractures, having been taught the care of fractures in medical school, subsequently having set such fractures while in general practice, and having treated many of them with physical medicine and rehabilitation.

7. He has one physician working under his direct supervision and control presently handling fractures of this type. He reads X-rays every day in the course of his practice and has read X-rays of Colles fractures on many occasions.

8. He is familiar with the general care necessary and required for the healing and treatment of Colles fractures.

9. He has treated Colles fractures both directly and through aftercare, and at the time of the trial he interpreted six of the X-rays in this case.

10. He has instructed numerous general practitioners in the field of physical medicine and rehabilitation in the course of his teaching at the University of Minnesota. The teaching is on an individual one-to-one basis and as part of his instruction he has had occasion to discuss with these general practitioners the procedures used in treating Colles fractures.

When Dr. Troedsson was asked the question, "[A]re you familiar with the required standard of care of medical doctors in this Twin City Metropolitan and surrounding area," the trial court would not allow him to answer. When Dr. Troedsson was asked the question, "Are you familiar with the procedures utilized in treating a Colles fracture," the trial court refused to let him answer.

Plaintiffs offered to bring in medical literature through Dr. Troedsson, showing standard procedures for care of Colles fractures, but such offer was of no avail.

In Swanson v. Chatterton, 281 Minn. 129, 160 N. W. 2d 662 (1968), we upheld the exclusion of the testimony of a medical expert offered by plaintiff on the ground that the offered medical expert did primarily administrative work as chief of the medical staff of the Veterans Administration Hospital; that he had little or no experience in the treatment of the particular injury involved; and that he had no familiarity either with the accepted authorities or the scientific writings regarding that particular injury.

In the case before us, the trial judge felt that the ruling in Swanson v. Chatterton, *supra,* required him to exclude Dr. Troedsson's testimony. In fact, none of the objections stated in the Swanson case applies to Dr. Troedsson. While it is true that a man of Dr. Troedsson's eminence and position must carry out

some administrative duties, it is also clear from the record that he has treated Colles fractures; that he continues to treat patients on a day-by-day basis; that he reads X-rays on a day-by-day basis; that he gives instruction to other doctors regarding the treatment of Colles fractures in the rehabilitation stage; and that he is familiar with the accepted authorities and scientific writings regarding treatment of such fractures.

In Swanson, we stated (281 Minn. 136, 160 N. W. 2d 667):

"The sufficiency of the foundation to qualify a witness as an expert * * * is primarily a question for the determination of the trial court, which we will reverse only if it is clearly wrong."

In the instant case, on the record, the exclusion of Dr. Troedsson's testimony was clearly wrong and therefore an abuse of discretion.

Reversed and remanded for a new trial.